IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

R.P. and C.F.,

    Plaintiffs,

v.                                                                                                    No. 1:18-cv-01051-KWR-KK

THE SANTA FE PUBLIC SCHOOLS,
AND GARY F. GREGOR, in his individual capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Defendants' Motion to Exclude Expert Testimony of Dr. Charol Shakeshaft, filed on August 21, 2020 **(Doc. 146)**.  Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is not well-taken in part and, therefore, is **GRANTED IN PART** and **DENIED IN PART.**

## BACKGROUND

This case arises out of the alleged repeated sexual assault of Plaintiffs by their fourth-grade teacher, Defendant Gregor, in the 2003-2004 school year while they were students at Agua Fria Elementary.  Plaintiffs allege that Defendant Gregor groomed them, injected them with drugs, and sexually assaulted them.

Plaintiffs are now more than 24 years old.  They allege that since the abuse, they have suffered from severe drug addiction and serious mental problems rendering them incapable of managing their affairs, with symptoms such as disassociation.  R.P. asserts she suffers from PTSD, fear, and anxiety stemming from her abuse by Defendant Gregor.

Plaintiffs asserted the following claims against Defendants Santa Fe Public Schools and Gregor:

Count I: Substantive Due Process violation under the Fourteenth Amendment (§ 1983) against Defendant Gregor.
Count II: Federal Constitutional Violation (§ 1983) against Defendant Santa Fe Public Schools[1]
Count IV: Title IX, 20 USC §§ 1681-88, for Sexual Abuse, against Defendant Santa Fe Public Schools
Count V: Claims under the New Mexico Tort Claims Act against Defendant Santa Fe Public Schools

Defendants contest Dr. Shakeshaft's qualifications as an expert witness. Neither party expressly asserted that an evidentiary hearing was necessary and thus the Court will rule on the papers after considering the parties' briefing and attached exhibits.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods, and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The touchstone of admissibility under Rule 702 is helpfulness to the trier of fact. *See Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991).

The gatekeeping function involves a two-step analysis. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). First, the Court must determine whether the witness may be qualified as an expert. To qualify as an expert, the witness must possess such "knowledge, skill,

---

[1] The parties filed a Stipulation of Dismissal with Prejudice for Count III, asserted against Defendant Vickie L. Sewing. **Doc. 72.** Therefore, the Court has omitted that count.

experience, training, or education" in the particular field so that it appears that his or her opinion rests on a substantial foundation and tends to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991).

Second, the Court must determine whether the witness' opinions are reliable under the principles set forth in *Daubert* and *Kumho Tire. Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). In *Daubert*, the Supreme Court identified five factors that may or may not be pertinent in assessing reliability: (1) the theory or technique in question can be and has been tested; (2) it has been subjected to peer review and publication; (3) it has a known or potential error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community. 509 U.S. at 593–94. When assessing the reliability of a proposed expert's testimony, the Court may consider the *Daubert* factors to the extent relevant, which will depend on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho Tire*, 526 U.S. at 150-51. "[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho*, 526 U.S. at 139.

Rule 702 further requires that expert testimony is relevant. One aspect of relevance is that the opinions have a sufficient factual basis and a reliable application of the methodology to the facts. *Daubert*, 509 U.S. at 591.

Expert witnesses may testify about ultimate issues of fact, but an expert may not state legal conclusions drawn by applying the law to the facts. *United States v. Richter*, 796 F.3d 1173, 1195

(10th Cir. 2015). Although an expert may not give an impermissible legal conclusion, an expert may give testimony that embraces an ultimate issue so long as the expert's testimony assists, rather than supplants, the jury's judgment. *Id.* (quoting *United States v. Dazey*, 403 F.3d 1147, 1171-72 (10th Cir. 2005)); *United States v. Schneider*, 704 F.3d 1287, 1293 (10th Cir. 2013) (stating that Rule 704(a) allows expert opinion on an ultimate issue so long as he explains basis for any summary opinion and does not simply tell the jury what result to reach). "Permissible testimony provides the jury with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field." *Richter*, 796 F.3d at 1195.

Where an expert witness's testimony is based on his experience, the expert witness must explain how his experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *See United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009) (quoting Fed. R. Evid. 702 advisory committee's note (2000)).

So long as the district court has enough evidence to perform its duty in assessing the relevance and reliability of an expert's proposed testimony, a hearing is not required. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997); *See Goebel*, 215 F.3d at 1087 (noting that a *Daubert* hearing "is not mandated" and that a district court may "satisfy its gatekeeper role when asked to rule on a motion in limine"). The proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met. *See Nacchio*, 555 F.3d at 1251.

Although the Court is required to conduct a *Daubert* examination of all experts before it, it need only expressly address the specific objections before it. *United States v. Avitia-Guillen*,

680 F.3d 1253, 1259 (10th Cir. 2012) ("When a party fails to object to an expert's methodology, the district court need not make explicit findings."), *citing United States v. Velarde,* 214 F.3d 1204, 1209 n.3 (10th Cir.2000) (noting the defendant did not challenge the doctor's "credentials, expertise, or qualifications to testify as an expert"); *Macsenti v. Becker*, 237 F.3d 1223, 1233 (10th Cir. 2001) (specific findings on the record only required on party's objection); *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 n.2 (10th Cir. 2000) (when no objection is raised, district courts are not required to make "explicit on-the-record rulings" and, "we assume that the district court consistently and continually performed a trustworthiness analysis sub silentio of all evidence introduced at trial.").

## DISCUSSION

Plaintiffs retained Dr. Shakeshaft as "an expert in educational administration," to opine on the sufficiency of Defendant Santa Fe Public Schools' (SFPS) practices, policies, procedures, and employee handbooks regarding training, prevention, detection, reporting, and investigation of sexual abuse. **Doc. 158 at 4;** *see also* **Doc. 140-29, Ex. AC** (Plaintiffs' Disclosure of Expert Witnesses) ("Dr. Shakeshaft may testify as to her analysis of the systems in place at the Santa Fe Public Schools as applied to the case at hand.").

Dr. Shakeshaft has a Ph.D. in educational administration and has served as a professor in that capacity for 40 years, currently with Virginia Commonwealth University. **Doc. 159-1 at 3.** Dr. Shakeshaft has extensive experience; she began "studying sexual abuse of students in schools in the 1980s," has received three grants by the U.S. Department of Education and has authored a Congressionally mandated report on educator sexual misconduct in the United States, published in 2004. *Id***.**

After reviewing relevant documents for the case[2], Dr. Shakeshaft compiled her report, resulting in a series of "findings" relating to the adequacy of SFPS' policies for prevention of educator sexual misconduct, hiring practices/vetting of prospective candidates, training of administrators, employees, students and parents relating to sexual harassment, reporting and investigation mechanisms of educator sexual misconduct, responses to allegations of possible sexual misconduct and red flags, and employee and student safety supervision, including after an employee has been noted for possibly inappropriate behavior. **Doc. 159-1 at 23-52.** Dr. Shakeshaft concludes with a series of "opinions"[3], finding that "[a] combination of Santa Fe's (1) inadequate or absent policies, (2) lax hiring, (3) near total absence of training, (4) failures to report, (5) inadequate responses to allegations and red flags, and (6) cursory and undiscerning supervision led to the sexual abuse of R.P and C.F. The Santa Fe Public Schools displayed deliberate indifference to ensuring the safety of R.P. and C.F." *Id*. **at 54.**

Defendants largely argue that Dr. Shakeshaft is unqualified as an expert in this case because she "has never been a licensed public-school teacher, has never been a public school administrator, and has never worked in human resources in a public school setting," her opinions are unreliable, due to her lack of familiarity with relevant New Mexico legal standards at the time of the alleged sexual assaults, her opinions lack the requisite, rigorous methodology for admissibility, and her

---

[2] *See* **Doc. 159-1 at 5-8** for a full list of documents, pleadings, deposition transcripts, personnel and administrative files; teacher observations of Defendant Gregor, records of interviews of Gregor's students relating to his behavior in class, notes from school authorities' phone conversations, school reports, and available SFPS policies received and reviewed by Dr. Shakeshaft in developing her expert report. Dr. Shakeshaft notes, which is reflected in SFPS' Discovery Responses to "Plaintiffs' First Set of Written Discovery" (Doc. 159-4 at 1, 3-4)., that she was not provided with the relevant year's faculty or student handbooks/policy manuals and code of ethics for Agua Fria Elementary School, or SFPS and Agua Fria Elementary Schools' policies and training material related to the "detection, reporting and prevention of grooming behavior, sexual abuse, sexual harassment, and other related inappropriate conduct in effect at the time of the alleged incidents forming the basis of the claims during the 2003-2004 school year" because, according to SFPS, they were "no longer available." **Doc. 159-1 at 32-33.**
[3] *See* Doc. 159-1 , Ex. 1 at 53-54 for the full list of Dr. Shakeshaft provides eight "opinions."

testimony is further inadmissible under Rule 403 balancing factors as unfairly prejudicial, confusing the issues, and would tend to mislead the jury. **Doc. 146 at 1, 4, 6, 8-14**.

### A.      Dr. Shakeshaft's General Qualifications as an Expert

Defendants initially attack Dr. Shakeshaft's qualification as an expert on the basis that she has "never been a licensed public-school teacher, has never been a public school administrator, and has never worked in human resources in a public school setting never served." **Doc. 146 at 8.**

Rule 702 allows expert testimony where the "witness [is] qualified as an expert by knowledge, skill, experience, training, or education" to offer such opinions. *LifeWise Master Funding,* 374 F.3d at 928.

In addition to Dr. Shakeshaft's previously discussed academic credentials, her CV indicates that she has published over 100 articles, presented, spoken at workshops, and peer reviewed numerous papers relevant to the subject matter in this action. *Id***. at 55-86.** Further, Dr. Shakeshaft states that "[Her] peer reviewed research on the Standard of Care for the prevention of educator sexual misconduct has guided organizations including the National Association of Independent Schools and The Association of Boarding Schools in developing prevention strategies [and]…[she has] expertise and experience assisting educational and other youth serving organizations in handling cases involving allegations of trusted other sexual misconduct as well as in developing procedures and policies to prevent misconduct." *Id***. at 3.** She has provided expert testimony previously on similar subject matter. **Doc. 159-3, Ex. 3 at 79:6-11.** The Court concludes that under the parameters of Fed. R. Evid. 702, Dr. Shakeshaft's broad experience qualifies her to testify generally on educator sexual abuse and misconduct based on her training, education, background, and experience.

Defendants assert that Dr. Shakeshaft's lack of "independent knowledge" of the standards governing SFPS and New Mexico public schools at the time of Gregor's hiring and the alleged incidents disqualifies her from determining whether SFPS took appropriate action, "result[ing] in opinions that are contrary to the applicable law at the time…". **Doc. 146 at 8, 11** ("Dr. Shakeshaft's lack of familiarity with New Mexico law about what then constituted sexual abuse at the time led to an unfounded opinion about SFPS' duty to report that is unreliable."). Citing to their Undisputed Material Facts in support of this motion and various other motions for summary judgment (**Doc. 139**), Defendants provide an analysis of New Mexico law at the time of the alleged sexual assaults and argue that Gregor's purported conduct did not rise to the level of "sexual abuse or child abuse" within the statutory meaning at the time, such that the principal's handling of the matter conformed with the law. **Doc. 146 at 9-11.** Without citation to the record or case law, Defendants assert that "Although [Dr. Shakeshaft] did not criticize SFPS' different reporting requirements for sexual misconduct versus sexual abuse, she conflated misconduct and abuse in rendering her opinions making those opinions unreliable and misleading." *Id***. at 11.**

Setting aside that Defendant's rely on a series of disputed facts in support of their position, these are legal arguments which Defendants are permitted to present to the jury, but which the Court finds inapplicable to determining Dr. Shakeshaft's qualifications as an expert. The majority of Defendants' arguments generally attack the weight of the evidence and go to the credibility of Dr. Shakeshaft's testimony, but not the admissibility of the opinion itself. Moreover, to the extent Defendants assert that there is a misleading timeline and other factual errors in Dr. Shakeshaft's report, (**Doc. 146 at 4, 8**), the Court finds they do not merit exclusion.[4]

---

[4] For example, among other things, Defendants assert that Principal Sewing determined that Defendant Gregor's conduct "did not rise to the level of child abuse or criminal sexual contact under the law" and that SPFS policy did not require that she report his conduct to CYFD or the police. **Doc. 146 at 5-6.** They argue that Dr Shakeshaft's characterization of Defendant Gregor's "grooming conduct and inappropriate touching as sexual abuse is contrary to

However, noting that this action contains both federal and state claims, the Court does agree with Defendants that Dr. Shakeshaft is generally unqualified to speak to whether SFPS' policies violated the standard of care or reporting laws with respect to New Mexico law. **Doc.191 at 5**. Having reviewed Dr. Shakeshaft's expert report as well as her deposition testimony, the foundation of her opinions rest upon her knowledge and experience relating to federal law and Title IX requirements. *See generally* **Doc. 159-1 Ex. 1** (Dr. Shakeshaft's Expert Report); **Doc. 140-71, Ex. BS at 20:16-23, 21:14-25-22-1** (Deposition Dr. Shakeshaft Video Transcript).[5] Therefore, the Court will preclude Dr. Shakeshaft from testifying as to whether SPFS' failed to adhere to reporting requirements for sexual abuse under New Mexico law. *Doe YZ v. Shattuck-St. Mary's Sch.*, 214 F. Supp. 3d 763, 781 (D. Minn. 2016) (finding Dr. Shakeshaft qualified to testify about whether mandatory reporting statutes and policies and procedures schools have implemented were in compliance with relevant statutes but precluding her from testifying with respect to the whether any employees or the school violated the state's reporting laws).

### B. Reliability and Relevance of Dr. Shakeshaft's Opinions

Defendants object that Dr. Shakeshaft's opinions (1) lack "any reliable methodology," (2) that she is unaware of the legal standards at the relevant time and (3) that the deficiencies with SFPS' policies she identifies in her report "do not reference any relevant guidelines." **Doc. 146 at 11-12.** Defendants argue that Dr. Shakeshaft's "expectations" here with respect to SFPS' policies are at odds with those espoused in the report she authored for the U.S. Department of Education

---

the law at the time." *Id*. **at 6.** However, Defendants cite to disputed material facts in support of these assertions. To the extent Defendants argue that Dr. Shakeshaft's timeline is misleading for failure to include or errors in providing accurate dates relevant to investigation of Defendant Gregor's purported conduct, Defendants may question her at trial but the Court disagrees that this warrants preclusion of her testimony.

[5] When questioned whether she looked at New Mexico law in forming her opinion, Dr. Shakeshaft testified "I think I looked at a couple of things, I mean, my report is primarily based upon the Federal laws under Title IX, so I defer to the Federal laws" and stating that, in analyzing SPFS's hiring practices, she would analyzed SPFS' hiring practices pursuant to "the federal laws and requirements under Title IX." **Doc. 140-71, Ex. BS at 20:16-23, 21:14-25-22-1.**

in 2004. *Id*. **at 12.** Defendants target a portion of Dr. Shakeshaft's 52 page report, where she included a series of charts highlighting items that should be included in the application, screening, and interview processes, noting where SFPS' forms did so or were "not available." **Doc. 159-1 Ex. 1 at 35-36.** Defendants assert that, in generating these charts, Dr. Shakeshaft failed to "cite or reference the source of these model expectations." **Doc. 146 at 12.** They claim that her opinions cannot be tested and that it is unclear "whether they are even accepted within the educational community…" and are therefore "subjective belief and personal judgments." *Id*. **at 13.**

Plaintiffs respond, citing to portions of the 2004 congressional report that conform with Dr. Shakeshaft's position in this action and argue that Defendants incorrectly seek to "liken Dr. Shakeshaft's work as a Professor of Educational Administration to the work of an expert in the hard sciences who cannot support a scientific conclusion with testing data or research material." **Doc. 158 at 12-13.** Plaintiffs further assert that the case law Defendants' rely upon is inapposite. *Id*. **at 13.** Citing to *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.* (2007 WL 9734358 (D.N.M. Mar. 28, 2007)), Plaintiffs posit that in situations involving "soft sciences," the Court need not solely consider *Daubert* factors in weighing the admissibility of an expert's opinions. *Id*. **at 14.**

The Tenth Circuit held that witnesses "relying solely or primarily on experience ... must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014), *quoting* Fed.R.Evid. 702 advisory committee's note (2000 Amendment). The Court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. The court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). On the other hand, the

*Daubert* factors are meant to be "helpful not definitive" and the trial court has significant latitude in how it determines "whether or not" an expert's testimony is reliable." *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151–53, 119 S. Ct. 1167, 1175–76, 143 L. Ed. 2d 238 (1999). Here, the Court does not find the *Daubert* factors relevant.

While *Couture* is not binding upon the Court, it nevertheless finds its analysis of the reliability of expert testimony instructive:

> Although the [*Daubert*] factors, strictly applied, may weigh against admissibility, courts repeatedly have indicated that *Daubert* may not apply at all, particularly in the field of a "soft sciences" ... The Advisory Committee to the 2000 Amendments to Rule 702 noted other factors a court may consider if the *Daubert* factors are not applicable: (1) whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of litigation or whether they have developed their opinions expressly for the purpose of testifying; (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; (3) whether the expert has adequately accounted for obvious alternative explanations; (4) whether the expert is being as careful as he or she would be in his or her regular professional work outside litigation consultation; and (5) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert intends to give.

*Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 2007 WL 9734358, at *9 (D.N.M. Mar. 28, 2007) (citing Fed. R. Evid. 702, Advisory Committee Note (2000 Amend.)).

With respect to the first factor, Dr. Shakeshaft's significant experience and research in the field of educator sexual misconduct, spanning forty years, has already been acknowledged by the Court. Regarding the second factor, Dr. Shakeshaft has not impermissibly extrapolated to an unfounded conclusion; as provided in her expert report, she developed her opinions after reviewing an extensive compilation of relevant school documents, reports, and policies.[6] With respect to the third factor, the Court has not noted where Dr. Shakeshaft may have accounted for alternative

---

[6] See fn. 1 above for a non-exhaustive list of the items received and reviewed by Dr. Shakeshaft in compiling her report.

explanations. However, inasmuch as Defendants claim that Dr. Shakeshaft's opinions are "subjective," the Court is satisfied with her inclusion in her report that she has "examined these actions in relation to a set of standards of practice directed toward the prevention of sexual abuse and misconduct by adults in youth-serving institutions," with citation to a long list of organizations from which she drew upon to formulate "a synthesis" of standards and policies for the prevention of educator sexual misconduct. **Doc. 159-1 Ex. 1 at 23.** With respect to the fourth factor, the Court is unconvinced by Defendants' arguments that Dr. Shakeshaft has adopted a different approach here than relating in her 2004 congressional report. With respect to the fifth factor, there is no evidence that another field would reach more reliable results relating to educator sexual misconduct in the context of this action. The Court notes that many of Dr. Shakeshaft's publications, papers and research are peer-reviewed. *Id*. **at 56-70.** On balance, considering these factors and FRE 702, the Court finds that Dr. Shakeshaft's testimony is reliable and relevant, and, importantly, will assist the trier of fact to understand or determine a fact in issue. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. at 592, 113 S.Ct. 2786.

### C. The Court Rejects Defendants' Rule 403 Argument

Defendants' final argument is that Dr. Shakeshaft's testimony should be excluded under Federal Rule of Evidence 403. **Doc. 146 at 14-15.**

Any "proffered expert testimony must also pass muster under Federal Rule of Evidence 403." *Schinagel et al. v. City of Albuquerque, et al.*, No. Civ. 07-481 LH/RLP, at *4 (D.N.M. Mar. 25, 2009) (unpublished), *quoted in Martinez v. Salazar*, No. CV 14-534 KG/WPL, 2016 WL 9488862, at *2 (D.N.M. Dec. 14, 2016). Fed. R. Evid. 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of

the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.." Fed. R. Evid. 403.

Defendants argue that Dr. Shakeshaft's testimony, even if determined admissible under Rule 702, should nevertheless be excluded because her report and opinions "… are unfairly prejudicial, confuse the issues, and would tend to mislead the jury." **Doc. 146 at 14.** Specifically, Defendants take issue with Dr. Shakeshaft's testimony because it is "premised on her characterization of the reported allegations against Defendant Gregor as sexual abuse, rather than sexual misconduct," which Defendants assert is contrary to "the statutes, common law, and SFPS' policies … at the time." *Id*. **at 14-15.**

The Court rejects Defendants' conclusory arguments, which are absent citation to any case law. Defendants are entitled to set forth arguments at trial relating to their position on the appropriate legal characterization of Defendant Gregor's conduct.  However, the Court finds that Dr. Shakeshaft's opinions are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice or confusion.

## CONCLUSION

The Court will limit Dr. Shakeshaft's opinions as explained above and prohibit her from testifying about whether SFPS violated the requisite standard of care pursuant to New Mexico law.  However, she may opine on SFPS' obligations and adherence to the appropriate standard of care with respect to Title IX and federal law.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Exclude Expert Testimony of Charol Shakeshaft, Ph. D **(Doc. 146)** is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**

14